818 A.2d 1117

William FLEMING

v.

STATE of Maryland.

No. 45, Sept. Term, 2002.

Court of Appeals of Maryland.

March 14, 2003.

Geraldine K. Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, and Nancy S. Forster, Deputy Public Defender, on brief), Baltimore, MD, for petitioner/cross–respondent.

Shannon E. Avery, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, MD, for respondent/cross–petitioner.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

The question in this case is whether the trial court erred in refusing to instruct the jury on "mere presence" at the scene of a crime.

William Fleming, petitioner, was charged with possession with intent to distribute controlled dangerous substances, possession of controlled dangerous substances and felon in possession of a handgun. Following one mistrial,[1] a second jury in the Circuit Court for Baltimore City convicted Fleming of possession with intent to distribute cocaine, Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, § 286 (current version at Maryland Code (2002) § 5–602 of the Criminal Law

---

1. The first trial, conducted on January 4 and 5, 2001, in the Circuit Court for Baltimore City, ended in a mistrial when the jury could not reach a unanimous verdict.

Article), and he was sentenced to a fourteen-year term of imprisonment.

On the afternoon of June 21, 1999, Sergeant Herbert Timberlake of the Baltimore City Police Department, together with two other officers, was patrolling the streets of Baltimore in an unmarked police car. At approximately 5:00 p.m., a woman standing near an alley on Collington Avenue caught Sgt. Timberlake's attention, and, while looking down the alley, Timberlake observed a man later identified as petitioner exiting the backyard of 905 Collington Avenue. Timberlake testified that petitioner turned toward the police car, thereby enabling the officer to observe a plastic bag in his hand. Timberlake asked the other officers to stop the car. According to Timberlake, as the officers exited the vehicle and approached petitioner in the alley, petitioner tossed the bag into the yard of the house. The officer noticed the bag in the yard, recovered it, and arrested petitioner. The plastic bag contained purple-topped vials later found to contain cocaine.

At trial on January 8 and 9, 2001, defense witnesses described a different version of events. Annie Fleming, petitioner's sister, testified that the home at 905 Collingwood Avenue had belonged to their now-deceased mother. Their brother, John Fleming, lived in the house with several boarders. Because John was incarcerated at the time, the other siblings periodically checked the house.

On June 21, 1999, Annie Fleming asked petitioner and her other brother, Joe Cannon, to check on the house. Petitioner picked up the key from his sister and, according to Joe Cannon's testimony, met Joe Cannon at the house. After the two brothers checked the house to ensure nothing was missing, Joe left petitioner to lock the house. Yvonne Cannon, a neighbor who lived one house away, testified that, as she prepared to hang wash in her backyard, she saw petitioner locking the rear door of the house. She spoke to him as he was leaving, and then the police arrived. The police told petitioner to sit on the steps, and one of the officers picked something up in the yard. Yvonne Cannon testified that just

before petitioner left the house she had seen police chasing "three little young guys," one of whom threw something into the yard of 905 Collingwood Avenue. When Yvonne Cannon tried to tell the officers what she had seen and that petitioner simply was leaving his mother's house, the officers were "nasty" and told her to "shut up."

At the close of evidence, defense counsel asked the trial judge to instruct the jury on mere presence. Defense counsel requested Maryland Criminal Pattern Jury Instruction No. 3:25 on "mere presence."[2] The trial judge refused to give the requested instruction. The jury convicted Fleming of possession with intent to distribute cocaine and acquitted him of the heroin charges.[3] Fleming was sentenced to a term of incarceration of fourteen years.

Fleming noted a timely appeal to the Court of Special Appeals, raising the single issue of whether the trial judge erred in refusing to instruct the jury that mere presence at the scene of a crime is not sufficient to convict. In an unreported opinion, the intermediate appellate court held that, although a mere presence instruction was applicable considering the facts of the case, the judge's other instructions on presumption of innocence, reasonable doubt, and the elements of the crimes charged made it clear that mere presence at the crime scene was not sufficient for a conviction.

This Court granted Fleming's Petition for Writ of Certiorari and the State's cross-petition. *Fleming v. State*, 369 Md. 659, 802 A.2d 438 (2002). Two questions are presented for our consideration:

---

**2.** Maryland Pattern Jury Instruction No. 3:25 reads as follows:

"A person's presence at the scene of a crime, without more, is not enough to prove that the person committed a crime. The fact that a person witnessed a crime, made no objection or did not notify the police does not make that person guilty of a crime. However, a person's presence at the time and place of the crime is a fact in determining whether the defendant is guilty or not guilty."

**3.** The State entered a *nolle prosequi* on the handgun charge.

Was the evidence presented at trial sufficient to generate the requested instruction on mere presence?

If properly generated, was the requested mere presence instruction fairly covered by the other instructions actually given by the trial court?

Although we agree with the Court of Special Appeals that the instruction was applicable in light of the evidence presented at trial, we disagree that the instructions given fairly covered mere presence and, therefore, we shall reverse.

It is the duty of the trial judge to instruct the jury concerning the law applicable to the case. *See* Maryland Rule 4–325; *General v. State,* 367 Md. 475, 485, 789 A.2d 102, 107 (2002). Rule 4–325(c) provides as follows:

"The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given."

Thus, it is clear that the trial judge is required to give a requested instruction that correctly states the applicable law and that has not been fairly covered in other instructions. A court may refuse a particular instruction if the concept is fairly covered by other instructions. A defendant is not entitled to a particular worded jury instruction where jury instructions given cover the substance of the requested jury instruction.

▪▪▪ The defendant is entitled to have the jury instructed on any theory of the defense that is fairly supported by the evidence. *See General* at 485, 789 A.2d at 108. Whether a particular instruction must be given depends upon whether there is any evidence in the case that supports the instruction; if the requested instruction has not been generated by the evidence, the trial court is not required to give it. *See id.* at 486–87, 789 A.2d at 108–09; *Hof v. State,* 337 Md. 581, 612, 655 A.2d 370, 386 (1995); *Binnie v. State,* 321 Md. 572, 582,

583 A.2d 1037, 1041 (1991). Whether the evidence is sufficient to generate the requested instruction in the first instance is a question of law for the judge. *See General,* 367 Md. at 487, 789 A.2d at 109. In evaluating whether competent evidence exists to generate the requested instruction, we view the evidence in the light most favorable to the accused. *Id.,* 789 A.2d at 109.

On appeal, instructions are reviewed in their entirety to determine if reversal is required. The jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and cover adequately the issues raised by the evidence, the defendant has not been prejudiced and reversal is inappropriate. Reversal is not required where the jury instructions, taken as a whole, sufficiently protect the defendant's rights and adequately covered the theory of the defense. *Bruce v. State,* 318 Md. 706, 731–732, 569 A.2d 1254, 1267 (1990).

It is a universally accepted rule of law that mere presence of a person at the scene of the crime is not of itself sufficient to prove the guilt of that person, even though it is an important element in determination of the guilt of the accused. *See e.g., Moye v. State,* 369 Md. 2, 796 A.2d 821 (2002); *White v. State,* 363 Md. 150, 767 A.2d 855 (2001); *Taylor v. State,* 346 Md. 452, 697 A.2d 462 (1997); *Wilson v. State,* 319 Md. 530, 573 A.2d 831 (1990); *Tasco v. State,* 223 Md. 503, 165 A.2d 456 (1960); *Watson v. State,* 208 Md. 210, 117 A.2d 549 (1955); *Hopewell v. State,* 122 Md.App. 207, 712 A.2d 88 (1998); 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law,* § 38 pp. 225–26 (15th ed.1993); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law,* ch. 6 pp. 741–42 (3d. Ed.1982).

The concept that mere presence at the place of a crime is not of itself sufficient to convict appears early in the law initially in the context of accomplice liability. *See e.g., Hopewell,* 122 Md.App. at 210–16, 712 A.2d at 90–93 (citing cases); *State v. Hildreth,* 31 N.C. 440 (N.C.1849); Lewis Hochheimer, *The Law of Crimes and Criminal Procedure,* § 26, p. 16 (1st

ed. 1897). The modern view, however, does not limit the mere presence doctrine to accomplice liability, but instead finds it applicable to narcotic cases. *See e.g, Pringle v. State,* 370 Md. 525, 547, 805 A.2d 1016, 1028 (2002) (holding evidence did not support probable cause to arrest defendant based on "mere presence" in car where narcotics were located); *Moye,* 369 Md. at 16, 796 A.2d at 829 (requiring more than proximity to narcotics to sustain a conviction of possession); *Taylor,* 346 Md. at 460, 697 A.2d at 466 (noting that "mere proximity to the drug, mere presence on the property where it is located ... is insufficient to support a finding of possession."); *State v. Harris,* 647 So.2d 337, 338 (La.1994) ("It is settled ... that the mere presence of someone in the area where the controlled dangerous substance is found ... is insufficient to constitute constructive possession."); *People v. Wolfe,* 440 Mich. 508, 489 N.W.2d 748 (1992) (requiring more than "mere presence" for convictions of possession with intent to deliver cocaine and possession of a firearm during the commission of a felony); *McShane v. State,* 530 S.W.2d 307 (Tex.Crim.App. 1975) (stating that defendant was entitled to jury charge on mere presence in narcotics case); *State v. Robinson,* 306 S.C. 399, 412 S.E.2d 411 (1991) ("Where narcotics are involved, mere presence is not sufficient evidence to support a conviction."); *State v. Lee,* 298 S.C. 362, 380 S.E.2d 834 (1989) (holding that defendant entitled to mere presence instruction when evidence supports conclusion that defendant was merely at the scene when drugs were found but it was questionable whether defendant had right to exercise dominion and control over them); *German v. State,* 429 So.2d 1138 (Ala.Crim.App. 1982) (addressing narcotics and mere presence in sufficiency of evidence case); *State v. Lewis,* 67 Conn.App. 643, 789 A.2d 519 (2002) (finding trial court improperly denied mere presence instruction for charges related to sale of narcotics); *cf. State v. Williams,* 258 Conn. 1, 778 A.2d 186 (2001) (approving mere presence instruction for defendant charged with illegal possession of a firearm); *United States v. Manning,* 618 F.2d 45 (8th Cir.1980) (holding defendant entitled to mere presence instruction in context of possession of a firearm).

■ **435**

■ The concept of mere presence, and a person's entitlement to a jury instruction on the law related to that concept, is not limited merely to accomplice liability. In addition to the situation where there is an issue as to whether the defendant is guilty as an aider and abettor, the trial court may be required to charge the jury as to the effect of mere presence where the defendant is charged with possession of contraband as a result of being present at or near where the contraband was found.[4]

Most of the time, the discussion of "mere presence" has arisen in the context of sufficiency of the evidence, and not in the context of entitlement to a particular jury instruction. The issue before us in this case is not the sufficiency of the evidence to convict but whether the trial judged erred in refusing to give the "mere presence" instruction requested by petitioner. In an unreported opinion, the Court of Special Appeals held that the requested instruction was a correct statement of law, that it was applicable under the facts of this case because Fleming presented evidence that someone else might have thrown the drugs where they were found, but that mere presence was fairly covered by the instructions actually given.

■ We observe that petitioner was seeking a jury instruction informing the jury that his mere presence and proximity to the drugs alone were insufficient to convict. A mere presence instruction is not necessary when the jury is instructed properly on the elements of the crime. *See Lewis*, 789 A.2d at 524–25. Considering the instructions as a whole, and particularly the constructive possession instruction, we

---

4. The language in *Hopewell v. State*, 122 Md.App. 207, 712 A.2d 88 (1998), to the contrary is hereby disapproved. In *Hopewell*, the Court of Special Appeals stated that "Maryland case law has continued to maintain the principle that the mere presence doctrine applies only to situations in which multiple persons are alleged to have committed an offense." *Id.* at 218, 712 A.2d at 94. To the extent that this language implies that the mere presence doctrine is limited to those situations where another person has been charged, or only to the aider and abettor situation, it is overruled.

conclude that the jury instructions did not convey adequately the theory of the defense.

The State presents several arguments. The first argument we have already rejected—that the mere presence doctrine is limited to accomplice liability and the context of principals and accessories. The second argument is that the evidence in this case did not relate to constructive possession, but rather one of actual possession. Finally, the State argues that petitioner's requested mere presence instruction was fairly covered by the instruction on the presumption of innocence[5] and the requirement upon the State to prove each element of possession. We do not agree with either of the State's remaining arguments.

The defense theory in this case was that petitioner was merely standing near the bag containing narcotics which were thrown there prior to his arrival, and that he had no knowledge of or control over them.[6] Equally important was the State's theory, which vacillated between constructive possession and actual possession. In its initial closing argument, the State told the jury as follows:

> "Ladies and gentlemen of the jury, this is the amount and the street value of the drugs that were seized around the defendant when he was arrested, near him in the yard, in the kitchen, hidden in a coat.

* * *

---

**5.** The trial court instructed the jury as to the presumption of innocence instruction and reasonable doubt as follows:

> "Do not assume the defendant is guilty merely because he is being prosecuted and charges have been placed against him. The burden of proof is on the State to prove every element of the crimes charged against the defendant and he is presumed innocent until proved guilty beyond a reasonable doubt. That presumption stays with him throughout the trial unless or until overcome by proof showing his guilt beyond a reasonable doubt."

**6.** We are unable to set forth or consider the defense closing argument in full, because before defense counsel concluded his argument, the trial court cut him off and informed him that "[y]our time is up."

"Those two police officers, the first eyewitnesses on the scene, testified about where the defendant was when they first saw him. They both said standing in the alley right outside the gate. They put him in exactly the same place. A year and a half has passed.

"Ms. Cannon, the neighbor did not live next door, but two doors down. She told you, well, she remembers him being somewhere else. It's been a long time since (inaudible). It's been a long time since June 21st, 1999. She may have just forgotten. She may have forgotten where he was exactly when the police approached, and if he was on the other side, or if he was no the other side of the fence. If he was on the other side of the fence, it may be that she just doesn't remember, or she would not have seen him throw something over the fence into the yard.

\* \* \*

"The defendant had the keys. He had the cocaine at his feet. The heroin was right inside the door. . . ."

In rebuttal, the State then argued actual possession of the cocaine:

"This was a simple case. The police saw [petitioner] drop the cocaine, they went up to him, an investigation followed, and, ultimately, they got into the house, searched the house, and found the other drugs."[7]

 We conclude that the requested instruction was an accurate statement of the law, and for the most part, applicable to the facts generated in the case.[8] The jury could have accepted the State's argument as to petitioner's location, with

---

7. The present appeal does not involve the charges against petitioner related to the material in the house. Petitioner was acquitted on these charges. We note, however, that the State's only theory argued with regard to these charges was constructive possession.

8. One sentence of the requested instruction was not applicable to petitioner's situation. The sentence reads: "The fact that a person witnessed a crime, made no objection or did not notify the police does not make that person guilty of a crime." The trial court, however, could have excised this portion of the otherwise applicable charge.

the narcotics "near him in the yard," and the argument of the defense witness that "whatever [the police] found in the yard didn't belong to [petitioner]." Thus, the jury may have believed petitioner was simply in proximity to the bag, without any knowledge of its existence or illegal contents. An instruction on mere presence was warranted to prevent the jury finding him guilty of possession based solely on this proximity. *See Brooks v. State,* 103 Nev. 611, 747 P.2d 893 (1987) (reversing conviction due to failure to give instruction where defense presented testimony of eyewitness that defendant was innocent bystander).

The jury instruction on possession did not adequately explain the requirements of possession of a controlled dangerous substance and thus, the instructions as a whole did not cover the meaning of the requested jury instruction on mere possession. *See State v. Davis,* 768 So.2d 201 (La.Ct.App. 2000) (finding no error in trial court's failure to give mere presence instruction where possession instruction contained statement that possession required that defendant "willfully and knowingly" had right to control contraband). The trial court instructed the jury as follows on the possession with intent to distribute cocaine:

> "Possession means what all of us think it means. It means having control over. I possess the cup that I hold in my hand. I possess the book that is on the bench. I possess my topcoat and hat which are down the corridor in my office.

> "I live about six or so miles from here with my wife and I'm not sure whether she's home this afternoon or not, but whether she is or not, both of us are in joint possession of all of those things in the house which we share jointly. I am in possession of all of those things that are individually mine, just as my wife is in possession, wherever she may be at the moment, of all of those things which are individually hers. Possession means having control over alone or with one or more other people."

It is obvious upon reading the instruction given by the trial court as to possession that the court included the notion of constructive possession as well as actual possession. Moreover, the court failed to explain adequately to the jury that along with the requirement of the ability to exercise dominion and control, knowledge is an element of the offense of possession of a controlled dangerous substance. *See Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988).

The purpose of a mere presence instruction in a drug case is to inform the jury that simply because the defendant was in close proximity to the drugs in question, it may not infer knowledge and intent to exercise dominion and control from that fact alone. *See State v. Brownlee,* 318 S.C. 34, 455 S.E.2d 704 (1995) (holding that the law does not permit inference beyond a reasonable doubt, without more, from presence in proximity to drugs). The instruction on possession given by the trial court failed to do so.

The instruction on mere presence was both warranted by the evidence and not sufficiently covered by the instructions actually given. Failure to give the instruction was reversible error.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*